the appearance of the accused to answer the charges against them.

*Judgments accordingly.*

Doyle and Hunsicker, JJ., concur in the judgment and opinion.

Doyle and Hunsicker, JJ., of the Ninth Appellate District, sitting by designation in the Eighth Appellate District.

L. B. Smith, Inc., Appellant, *v.* Aetna-Standard Engineering Co., Appellee.

(No. 3253—Decided July 28, 1949.)

*Messrs. Mitchell, Mitchell & Reed* and *Messrs. Smith, Ristig & Smith,* for appellant.

*Messrs. Harrington, Huxley & Smith,* for appellee.

NICHOLS, J. This action is in this court on appeal on questions of law by plaintiff from a judgment in favor of defendant in the Common Pleas Court of Mahoning County, the action being one for damages for breach of contract. A jury was waived and the cause submitted to the court.

The material allegations of plaintiff's petition are:

"2. That the said plaintiff on December 1, 1945, submitted to the defendant its written purchase order for ten (10) Ross fork lift trucks, which purchase order was acknowledged and accepted by the said defendant by its written general order dated December 6, 1945.

"3. That the said plaintiff has since the above date demanded delivery of the said ten (10) trucks and has at all times been fully prepared to make payment therefor in conformity with the terms of the said purchase order and general order, but the said defendant has refused to make delivery of the ten (10) trucks, and still refuses so to do, to the damage of the said plaintiff in the sum of $18,359.60, for which sum, and costs, it prays judgment."

Allegations of the answer are as follows:

"For its answer the defendant admits that on or about December 1, 1945, the plaintiff submitted its written purchase order for ten (10) Ross fork lift trucks as alleged in said petition and admits that the receipt of the said purchase order was acknowledged by this defendant; admits that since the said date plaintiff has demanded delivery of the said trucks and admits that the same have not been delivered, but denies that the failure to make such delivery resulted in damage to this plaintiff to the extent set forth in its petition.

"2. Further answering this defendant says that the said ten (10) Ross fork lift trucks which constitute the subject matter of this action were not manufactured by this defendant in its usual course of business but were manufactured for the United States Government for war purposes under contract with the quartermaster department of the Government, and under and by virtue of the terms of a special permit secured by the United States Government from the original manufacturers of the Ross lift trucks and the holder of the original patents for such manufacture.

"3. This answering defendant further says that upon the termination of the said contract by the quartermaster department of the United States Government the said Ross lift trucks became part of surplus inventory under the terms of the Contract Settlement Act of 1944 and as such this answering defendant held only a special and limited title to the said equipment, in that it could only be disposed of as provided in the terms and provisions of the said act and the joint termination regulations issued thereunder.

"4. Further answering, this defendant says that *after* the issue of the said purchase order by the plaintiff herein and its acknowledgment by the defendant, a duly authorized officer of the quartermaster office of the United States Army, under authority of the Contract Settlement Act of 1944 and his general power as an army officer during the war period, ordered that said trucks be delivered to an agency of the Reconstruction Finance Corporation and that such act on the part of the authorized officer precluded delivery of the said trucks to the plaintiff as contemplated by its purchase order.

"5. Further answering, this defendant says that the plaintiff herein at the time of submitting to this defendant the said purchase order was fully aware

that the defendant was without authority to sell said equipment except as provided by the terms of the said Contract Settlement Act of 1944 and regulations issued thereunder and was aware that the said Ross lift trucks were subject to the decision of the duly authorized officers of the United States Government with respect to their final disposition.

"6. Further answering, this defendant says that there has been no failure at law on its part as alleged by plaintiff, in that the said purchase order was at all times subject to the limitation of ownership of the defendant and the authority of the United States Government with respect to disposition of war material."

Plaintiff's demurrer to the new matter set up in defendant's answer having been overruled, the plaintiff filed its reply in which it admits the allegations contained in paragraphs two and three of the answer, but says:

"* * * it is not informed as to the allegations in paragraph four of the answer as the same are peculiarly within the knowledge of the defendant, but plaintiff denies that said allegations, if true, constitute a defense to plaintiff's petition for the reason that the authority of the quartermaster office of the United States Army to dispose of said ten Ross fork lift trucks, ceased and terminated upon the defendant's acceptance of the plaintiff's order, by virtue of a specific provision of the regulations promulgated under the Contract Settlement Act of 1944, to wit:

" '432.4. *Revocation of war contractor's authority.* The contracting officer may at any time revoke or restrict the authority of a war contractor to make or approve sales and retentions of contractor inventory. The revocation or restriction will not operate retroactively.'

"Plaintiff therefore denies that the defendant was precluded from delivering the aforementioned trucks

to this plaintiff by an order of an officer of the United States Army issued to the defendant following its acceptance of plaintiff's order.

"In reply to the allegations contained in paragraph five of the defendant's answer, plaintiff denies that following the defendant's acceptance of the plaintiff's order, said Ross trucks were subject to the decision of the duly authorized officers of the United States Government with respect to their final disposition. Further replying, the plaintiff says that the Contract Settlement Act of 1944 and the regulations promulgated thereunder specifically authorized and empowered the defendant to irrevocably consummate sales or enter into contracts to sell the said Ross trucks on the same terms as the sale to this plaintiff; that the defendant representing itself to have the authority to sell said trucks as provided in said act and regulations, induced this plaintiff, which relied on the defendant's representations, to offer to purchase said Ross trucks; that the defendant, while continuing to represent itself to have the right to sell said trucks, unconditionally accepted the plaintiff's offer, and that there is no provision in the Contract Settlement Act of 1944 or the regulations which, under the circumstances set forth above, excuses and relieves the defendant from responding in damages to the plaintiff for defendant's failure to comply with the terms of said offer and acceptance.

"Plaintiff denies the allegations contained in paragraph six of said answer."

The trial court first overruled the demurrer of plaintiff to the so-called new matter set up by defendant in its answer.

Except as to the amount of damages, such answer was in effect a confession of plaintiff's right to recovery, and the new matter pleaded was in avoidance

thereof. In passing upon such demurrer the trial court properly considered the same in the light of the Contract Settlement Act of 1944 and regulations adopted pursuant thereto. The question then presented was no different from that arising upon the final hearing upon the pleadings and evidence, from which that court found, in part, as follows:

"The defendant, under contract with the United States Government, manufactured for it under its special permit, for war purposes, 10 Ross fork lift trucks. On termination of the contract, these trucks became surplus inventory under the Contract Settlement Act of 1944. Plaintiff submitted its written purchase order to defendant for said trucks, which order was acknowledged in writing by the defendant. Immediately *thereafter* and before delivery of the trucks, an officer of the quartermaster department, the contracting agency, ordered on behalf of the United States the delivery of these trucks to another agency of the Government and this was done. For the foregoing reason the demand of the plaintiff for the delivery to it of said trucks has not been complied with by the defendant and damages are asked by the plaintiff for said failure."

Such findings are supported by the evidence and admissions in the pleadings and are not contrary to the manifest weight thereof. Under authority of the Contract Settlement Act of 1944 and regulations issued thereunder, both the quartermaster department, designated as "contracting agency," and the defendant, designated as "war contractor," were concurrently endeavoring to sell or dispose of such trucks, as war surplus inventory, in accordance with authority granted to each. As found by the trial court and admitted in the answer of the defendant, immediately *after* the defendant in writing had accepted the written pro-

posal of plaintiff for the purchase of these trucks, the quartermaster department, acting on behalf of the United States Government, ordered the delivery of such trucks, together with eight other trucks of like kind and manufacture, and being *all* such trucks remaining as surplus inventory, to another agency of the United States Government, to wit, the Reconstruction Finance Corporation, and thus made it impossible for defendant to make delivery under its contract with defendant.

Assuming, as did the trial court, that a valid contract of sale had been entered into between plaintiff and defendant *before* the quartermaster department ordered the trucks delivered to another agency of the Government, such contract embraced, however, within its legal terms, though not specifically referred to therein, all the provisions of the Contract Settlement Act of 1944 governing the disposition of surplus inventory, both parties having with knowledge dealt with the same as war surplus inventory and not in the usual course of trade. See 9 Ohio Jurisprudence, 416, Section 189.

One of the sections of the Contract Settlement Act of 1944, relied upon by the trial court, to wit, section 12 (e), provides as follows:

"Notwithstanding any other provisions of law, but subject to subsection (h) of this section, the contracting agency concerned or the director, or any Government agency designated by him, on behalf of the United States, may, by the exercise of any contract rights or otherwise, acquire and take possession of any termination inventory of any war contractor, and any materials removed by the Government or stored for its account under subsections (c) and (d) of this section, whether or not such materials are finally determined not to constitute termination inventory."

The balance of the section provides for compensation to the contractor and has no bearing upon the question before the court. Subsection (h) referred to also has no bearing on the question before the court in that it simply provides that subsection (e) is no limitation upon the War and Navy Departments to exercise their power of acquisition of property.

By the embodiment of this provision of the law in the contract between plaintiff and defendant, defendant's right to demand delivery of the trucks was subject to the right of the contracting agency on behalf of the United States to take possession of these trucks, known by the parties to be termination inventory, "notwithstanding any other provisions of law."

Counsel for plaintiff have strenuously urged that these trucks lost their character as "termination inventory" as soon as defendant accepted its proposal to purchase them. We conclude, however, that the trucks remained termination inventory until they were actually removed from the possession of the war contractor, and until which event they were subject to the right of the contracting agency, as provided in section 12 (e), *supra*. Otherwise, the provisions of such section would be meaningless, since it is clear that at all times previous to complete disposition by the war contractor the contracting agency had full authority to dispose of termination inventory, "notwithstanding any other provisions of law."

This position is strengthened by the further regulations as follows:

"432.3 General Restrictions on War Contractor's Authority. The authority of a war contractor to dispose of contractor inventory or to authorize or approve a disposition by a subcontractor is subject to the following general restrictions, in addition to the restrictions specifically set forth in this section IV.

"(1) Any applicable Government restrictions upon the disposition of secret, confidential, or restricted material, or existing contract provisions regarding the disposition of material under the contract, or any restriction on the disposition of material subject to a lien, shall govern such disposition, notwithstanding the provisions of this regulation.

"(2) *The contracting officer may require any item of contractor inventory to be transferred to the Government.* He will do so in the case of critical items or other items which the Government wishes to acquire for production or supply purposes. * * *" (Italics supplied.)

The act discloses a plan for concerted action by the contracting agency and the war contractor for disposition of war surplus assets to the best interests of the Government and the hastening of the reconversion of a manufacturing plant, such as defendant's, to peacetime production, the war contractor's authority being restricted to sales of surplus inventory for not less than the cost which the Government would otherwise be liable under its contract. There is no evidence that defendant profited in the least from the fact that these trucks were ordered transferred by the contracting agency to another agency of the Government, although in argument it is intimated by counsel for plaintiff that defendant failed to remonstrate or interpose any objection to such transfer with the intent thereby to curry favor with the contracting agency. If the trial court was right in its view of the law, we fail to see how any remonstrance or objection by the war contractor to the action of the contracting agency could have prevented or hindered the transfer of the trucks by the contracting agency. The authority of the contracting agency under the section of the act above quoted being clear and there being no evidence that defendant

in any manner induced such action, these trucks were manufactured for the Government and were the property of the Government, subject to disposition in the manner provided by the act.

Under authority of the Contract Settlement Act of 1944, joint termination regulations were issued by the duly authorized agencies of the different departments of the Government.

By regulation 432.3 (2), issued under authority of the act, the defendant was authorized to make sales of termination inventory at cost, subject, however, to the restrictions set forth in the act and regulations. Construing the provisions of the act and regulations as a whole, what appear to be conflicting regulations can be harmonized by holding that the authority of the defendant contractor was subject to the paramount right of the Government to take these trucks. This the plaintiff must be held to have had knowledge of and consented to when dealing with property constituting termination inventory.

But it is urged by counsel for plaintiff that regulation 432.4 specifically provides that any revocation or restriction of the war contractor's authority will not operate retroactively. Such regulation reads as follows:

"Revocation of War Contractor's Authority. The contracting officer may at any time revoke or restrict the authority of a war contractor to make or approve sales and retentions of contractor inventory. The revocation or restriction will not operate retroactively. The contracting officer may cancel such revocation."

We hold this regulation has no application to the situation presented here. There was no revocation or restriction attempted to be made by the contracting officer on the general power of the war contractor to dispose of surplus inventory. Here the contracting agen-

cy took possession of termination inventory of the war contractor under the express provisions of section 12 (e) of the act, which provisions override and control all other provisions of law, as well as *all* regulations promulgated pursuant thereto.

Other regulations adopted for the purpose of carrying out the purposes of the act, and relied upon by plaintiff, are as follows:

"432.2 War Contractor's Authority, where Title is in the Government.

"(1) Where Government-owned material or material acquired or produced under a cost-plus-a-fixed-fee war contract or other war contract which provides that title to it shall vest in the Government, is in the possession of the war contractor, *he may dispose of it in accordance with this regulation* * * *." (Italics supplied.)

"442 Retentions and Sales at Cost.

"(1) War contractors may retain or *sell any contractor inventory at cost, without the approval of the contracting officer* or the next higher tier contractor. * * *" (Italics supplied.)

Like all other regulations, the last quoted are subject to the specific authority of the contracting agency to acquire and take possession of any termination inventory, under section 12 (e) of the act.

A reasonable construction of the act and regulations adopted pursuant thereto commands the holding that these trucks remained "termination inventory" subject to disposition by the contracting agency, at least until the physical removal thereof from the custody of the war contractor by delivery to a buyer. Such construction will not do violence to any of the seemingly contradictory provisions of the regulations adopted under authority of the act.

Upon termination of the war, army officers had been

sent into the factory of defendant to take charge of the disposition of these trucks, which had become surplus because no longer needed in the prosecution of the war. The officers were stationed in the factory of the defendant and constituted an agency of the Government, designated ''contracting agency.''

We think it proper to say here that under the Uniform Sales Act, in force in Ohio, where authority of an agent to sell specific property of his principal, in a deliverable state, is unrestricted, the property in the goods passes to the buyer when an *unconditional* contract to sell is made, but the Uniform Sales Act does not prevent a provision in the contract of sale, made by an agent for his principal, whereby the property in the goods is not to pass to the buyer if seized by the Government before delivery to the buyer, and such condition may be either expressly written in the contract or incorporated therein by operation of law. Such is expressly provided in Section 8399, General Code, by the use of the words, ''unless a different intention appears.''

After considering all the errors assigned by plaintiff, we conclude there was no error in the proceeding of the trial court, and that its judgment must be affirmed.

Since the contract between plaintiff and defendant embraced and included within itself the provision of section 12 (e) of the act, making delivery of these trucks to the plaintiff subject to the right of the contracting agency of the Government to acquire and take possession of them, it is unnecessary to discuss the law governing cases where an *unconditional* contract of sale has been entered into and fulfillment by one party has been made impossible by the intervention of something not provided for in the contract.

To any who may be interested reference may be had

to the authorities cited in the opinion of the trial court, to wit, *London & Lancashire Indemnity Co. of America* v. *Bd. of Commrs., Columbiana County,* 107 Ohio St., 51, 140 N. E., 672; *Omnia Commercial Co., Inc.,* v. *United States,* 261 U. S., 502, 67 L. Ed., 773, 43 S. Ct., 437.

See, also, *Columbus Ry., Power & Light Co.* v. *City of Columbus,* 253 F., 499.

*Judgment affirmed.*

PHILLIPS, P. J., concurs.
BUCKLEY, J., dissents.